CITY OF LUFKIN, Appellant,

v.

C. L. DUPUY, Appellee.

No. 6269.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 24, 1959.

Rehearing Denied Oct. 14, 1959.

C. E. Brazil, City Atty., Lufkin, Ward R. Burke, Diboll, for appellant.

George K. DuPuy, Collins, Garrison, Renfrow & Zeleskey, Lufkin, for appellee.

McNEILL, Justice.

The City of Lufkin, plaintiff, instituted this suit against C. L. DuPuy, defendant, seeking to have certain encroachments and obstructions removed from the alley in Block 18 of the original town of Lufkin as per the plat thereof dated January 27, 1888,

recorded in Volume P., pp. 368–369, Deed Records of Angelina County, and for an injunction to restrain the defendant from replacing encroachments or obstructions in the alley. The defendant answered by certain exceptions, by denial and pleaded the statute of limitation of ten years, alleging that "he, the defendant, and those under whose title he holds" have had adverse possession of the area in the alley at issue for more than ten years before the year 1939. The cause was heard by the court and after trial, judgment was rendered in favor of the defendant that the plaintiff take nothing by its suit, hence this appeal.

Block 18 lies along the south boundary of the original town of Lufkin as platted by the owners of the land. This block is divided by a 20 foot alley which runs on a course of S. 70° East connecting with South Second Street on the west, but fails to connect with South Third Street on the east as the southerly line of the original town plat cuts across this block, leaving the southerly end of the alley a dead end. And the plat indicates South Third Street also ends to the north before intersecting what would be the alley if extended easterly (but the street has since been extended southerly). Lots 1 through 6, inclusive, abut the alley on the north and lots 8 through 12 abut the alley on the south. Lot 1 is in the northwest corner of the block and the numbering runs east with lot 6 in the northeast corner. There is no lot 7 (which would have been located opposite and south of lot 6) since the south line of the plat intersects the block, cutting off the southeast corner, eliminating what would be lot 7 entirely and lots 8, 9, and 10 are all part lots, their numbering beginning at the southeast edge of the block with part lot 8, then part lots 9 and 10, and 11 and 12 in the southwest corner of the block.

J. J. Gunter and wife bought lots 1, 2, and 3 about the year 1921 and resided on these lots until 1943. Darwin Singleton bought lots 11 and 12 in 1921 and lots 8 and 10 about a year later. He built a home on lots 11 and 12 and lived there from 1922 to 1925. Then tenants occupied these premises until 1935 when he moved back and resided there until 1940. The testimony shows that Singleton called on the City Manager of Lufkin in 1922 and requested that the city open up the east end of the alley so that there could be complete passageway between South Second and South Third Streets, which street had no doubt been extended in the meantime. However, he was not encouraged in this so sometime later during the year he built a fence along the middle of the alley, beginning at the west line and extended it to the easterly edge of the dedicated alley. This fence completely surrounded the premises except the front yard facing the street on the west side of lot 12. Mr. Gunter likewise erected a fence adjoining the Singleton fence that extended from the west end of the alley to the east line of lot 3. This fence surrounded Gunter's property and both fences were kept and maintained for the pertinent years by the respective owners. During 1922 a hedge was planted along the jointly owned fence line in the alley by Gunter and Singleton and it has since been kept and maintained by each party on his side. The testimony shows the hedge had grown some 15 or 20 feet high and in places more than extended beyond the boundaries of the alley. Each party used the section of the alley which he had fenced in as a part of his yard, and mowed the grass and maintained it as the other part of the yard was maintained. This continued some 18 or 19 years. The public never used the alley at any time, although the City accepted its original dedication as such. The facts justify the court's conclusion that the parties acquired limitation of the portion of the alleyway involved in the suit prior to the effective date in 1939 of an Act amending Article 5517, Vernon's Texas Civ.St., so as to thereafter prohibit loss of city alleys by limitation, unless the matters hereinafter mentioned defeat this conclusion.

Sometime before 1928, probably in the early '20s, a predecessor of the Texas Power

& Light Company, the public utility now furnishing electric service, erected a service pole at the west end of the alley some 6 feet south of its north line. The testimony above shows that this pole was erected to carry electric lines to furnish service to the Gunter home on the north and to the tenant in the Singleton house on the south. It was further shown that sometime in the fall of 1929 a four inch gas main was laid in the alley from its west edge 127 feet east, at which point the gas line turned south through about one-half the distance of lot 10. Mr. Purdue, the gas company official, stated this line was put in to serve the Singleton residence. The testimony further shows that both utility lines are now serving other users but for the period prior to 1939 no other connections on either the electric or gas line appear to have been made. The utilities during the times material to the facts of the case held franchises to use the public ways of the City for their lines and equipment.

The defendant DuPuy purchased lots 1, 2, and 3 from Gunter and wife in 1944 and purchased those portions of lots 8, 9, 10, 11, and 12 abutting on the alley on February 20, 1954. In addition, by instrument dated July 8, 1954 he obtained from Darwin Singleton and wife, quitclaim deed to the southerly one-half of the alley and obtained a quitclaim deed dated July 17, 1954 to the north half of the alley abutting lots 1, 2, and 3 from Mrs. Gunter, who was then a widow and who owned the entire Gunter claim to the alley.

Plaintiff relies on three main points to reverse the lower court's judgment. The first one is that since defendant's plea of limitation was "that he, the defendant, and those under whose title he holds, have had and held peaceful, continuous and adverse possession * * *" of the premises in controversy and the undisputed evidence established that neither defendant himself nor any person for him ever had any actual adverse possession of the premises but the adverse claim is based solely on occupancy and use by his predecessors, there is a fatal variance between defendant's evidence and his pleadings. The early case of Cunningham v. Frandtzen, 26 Tex. 34, cited by plaintiff supports this contention. In that case the defendants relied upon the statute of limitation of three years, and they pleaded that *they and their predecessor* in interest have had and held adverse possession for such period of time. The proof showed the *entire* limitation period to have been through the predecessor's possession. The court held this was a fatal variance between allegation and proof. This early case was followed on original hearing by the court in Ragon v. Craver, Tex.Civ.App., 127 S.W. 1087, but on rehearing the court receded from this position. No latter case appears to have cited Cunningham-Frandtzen on the point involved and in view of our present liberalized rules of pleading established by the Supreme Court, it is our opinion that this early case is no longer authoritative on the point discussed. It does not appear that the contention now urged was mentioned in the trial court and it is here without merit.

Plaintiff's second point is that since public utilities under franchise from the City had been granted the right to lay and maintain their lines in the alley and other public ways within the City limits and had placed and maintained their lines in the alley involved, defendant failed to show continuous and exclusive possession. It cites and relies principally upon Rick v. Grubbs, 147 Tex. 267, 214 S.W.2d 925, 927, to support the proposition. This case is clearly distinguishable from the present one. Grubbs, the owner of lot 5, erected a fence around both his own and Rick's lot 4 adjoining, placed improvements upon and farmed and grazed stock on both lots for over 10 years. However, during this time Ricks, record owner of lot 4, (1) granted a 100 feet right of way to a pipeline company which laid seven different lines across the lot and one of its employees entered the enclosure to make inspection trips across the lot at least once each day, all of which was without protest by Grubbs, (2) granted the

state 25 feet off the side of this lot to widen a highway and Grubbs' fence was moved back accordingly, without protest by Grubbs, (3) granted a sign builder the right to erect a large sign on the lot and the sign was erected without protest, (4) granted the army permission to maneuver over lot 4 and this was actually done without Grubbs' protest. Justice Hart for the court said: "Possession in order to be adverse must be exclusive" but possession "shared with the owner or his agents or tenants" is not exclusive.

There was no "sharing" of possession in the present case. The two utility easements placed in the alleyway area were there during the limitation period to serve the limitation claimants only. The 4″ gas line placed in the area turned south across lot 10 owned by Singleton to serve others in another block; the electric line was supported by the one pole at the west end of the alley area 6 feet from its north line. At no time material to the contested period was it shown that either utility was in the alley area except for service to Gunter and Singleton or his tenants. While it is true that adverse possession may be interrupted by ouster, conduct claimed by the owner of an interest in the land must be such as would put a reasonably prudent person on notice that he actually had been ousted. American Nat. Bank of Beaumont v. Wingate, Tex. Civ.App., 266 S.W.2d 934 (14, 15) by this court. The act of neither utility here was such as to put the adverse claimants on notice that it was asserting a right hostile to that claimed by them. In Rick's case, supra, the pipeline company laid seven different pipelines across the lot and had a man walking them every day—not to render Grubbs, the adverse claimant a service, but for its own distinct use and benefit. Singleton testified that he gave both utilities permission to place their lines there. In addition, when the city's water line was laid to run from Second Street east to serve a Mr. Courtney it was not placed in the alley area but was put 2 feet south through Singleton's lots, with Singleton's permission. The map in evidence indicates the city had placed a sewer line in the north side of the east end of the alley but it stopped short of the contested area.

The case of Young v. City of Lubbock, Tex.Civ.App., 130 S.W.2d 418, 420 (no writ history) squarely supports the judgment of the trial court and defendant's position here. The opinion in this case was written by Justice A. J. Folley, later Supreme Court Justice. We quote from the opinion:

"There is no testimony as to any use made by these utility companies of the alley in question other than that their lines traversed the alley. It is not contended by the appellee that these companies had any rights in the alley other than easement rights. We think the rule is that 'to render possession exclusive, it is not necessary to preclude the exercise of an easement by a private person.' 2 C.J.S. Adverse Possession § 51, p. 568. 'Possession may be exclusive notwithstanding the land is subject to rights which are mere easements and not things in possession.' 2 C.J.S. Adverse Possession § 51, p. 568; Barker v. Publishers' Paper Co. et al., 78 N.H. 160, 97 A. 749."

■■ Plaintiff's last group of points is to the effect that since Singleton made two deeds after the limitation period had matured conveying parts of his lots, which deeds in describing the property called for "corner at the South boundary line of said alley through said Block 18; Thence North 70 West with the South Boundary line of said alley at 253.6 feet to the place of beginning;" and since defendant and others petitioned the City of Lufkin to open the alleyway all the way through the block to connect with South Third Street, this was (a) a rededication of the alleyway as such and (b) since defendant and others asked that the alleyway be opened in reliance upon which the city and some of its citizens acquired the additional land necessary to completely open the alley, defendant is estopped to claim the premises. A dedication is never presumed but must be manifested in a

declaration or act which evinces the clearest intention on the part of the dedicator to set aside and appropriate land for a public use. City of Brownsville v. West, Tex.Civ. App., 149 S.W.2d 1034, 1037. This suit is not between privies to the deeds, and we think the language used therein was for descriptive purposes only. But even if the circumstances raised a fact issue it was resolved against the city. McCarver v. City of Corpus Christi, 155 Tex. 153, 284 S.W.2d 142.

Plaintiff further urges that as defendant and four others in July, 1953, signed a petition addressed to the city requesting that the east end of the alley be condemned by it so that the alley could be opened and appeared before the City Commission for this purpose, this was a re-dedication of the alleyway for public purposes. Defendant testified that he only signed the petition and appeared before the City Commission as a neighborly act and accommodation to the other signers; that at the time he only owned lots 1, 2, and 3 on the north side of the alley. At the meeting of the City Commission it was stated by its officials that it did not have the money nor the desire to condemn the necessary property but the petitioners could go ahead and buy the land necessary to open the alley through to Third Street and the city would look into it and if it was not too much trouble the city would open the alley. The upshot of the matter was that a year passed without anything being accomplished when defendant bought the Singleton lots on the south side of the alley and obtained quitclaims from Singleton and Gunter to the area of the alleyway in contest. It was not until a year later, in June, 1955, that conveyances of the necessary land to open the alley were made to the city by C. M. Thompson, a petitioner, and B. W. Burleson and wife, conditioned that if the city did not open the alley within a reasonable time, the land should revert ipso facto to the grantors. The above facts do not show a re-dedication of the alley as such by defendant but at best a conditional offer at the time to open the alley if the city would obtain the needed land. City of Brownsville v. West, supra.

As the final part of its last contention, plaintiff argues that since defendant appeared before the city fathers under the circumstances related in the paragraph above, and that as the land necessary to open the end of the alley had been acquired that defendant was estopped to deny the city's right to the alley. The position of the city, as stated by the mayor, was not an acceptance of the proposal made in the petition, but was a counter proposal, which at best was not a very definite one to be acted upon and, we think under the circumstances obtaining, it was not shown that defendant's conduct caused any person to act to his detriment. But whether this be so or not— plaintiff failed to plead that defendant is estopped to assert the alleyway is lost to the city as was required to have been done. City of Waco v. Murray, Tex.Civ.App., 137 S.W.2d 1062; Murphy v. Lewis, Tex.Civ. App., 198 S.W. 1059 by this court.

The judgment of the trial court is affirmed.