**Ron BOYLE and Susan Boyle, Appellants,**

v.

**Dr. John R. BURK, Appellee.**

**No. 2–87–149–CV.**

Court of Appeals of Texas,
Fort Worth.

April 13, 1988.

Rehearing Denied May 18, 1988.

Morris & Schieffer, Garrett Morris, Fort Worth, for appellants.

Simon, Anisman, Doby, Wilson & Skillern, Joe D. Anderson, Fort Worth, for appellee.

Before FENDER, C.J., and JOE SPURLOCK, II and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

Appellants, Ron Boyle and Susan Boyle, brought a trespass to try title action against appellee, Dr. John R. Burk, to recover a strip of land adjoining land owned by appellee. The jury awarded appellee title to the property based upon a ten year and twenty-five year statute of limitations.

We affirm.

Appellee claims title to the strip of land in question by adverse possession in himself and in his predecessors in title to his land. In 1953, William Taylor purchased the property, Lot 42, El Rancho Estates, presently owned by appellee. On November 9, 1973, after Taylor had died, the First National Bank of Fort Worth as Independent Executor of the Estate of Taylor conveyed the property to Dr. James and Helen Way. Upon the Ways' subsequent divorce, Helen Way conveyed her interest in the property to Dr. James Way in May of 1978. The property was conveyed from James Way to appellee in July of 1978.

In August, 1961, a utility easement was granted by Maude Coffey and the Fort Worth National Bank, co-trustees of the Coffey Estate, to Texas Electric Service Company (TESCO). Maude Coffey and the Fort Worth National Bank were predecessors in interest to Lot 14, Block 8, Lost Creek Addition property. A powerline was run down through the easement pursuant to that grant. The strip of land in question lies within the utility easement.

Appellants purchased Lot 14, Block 8, Lost Creek, a subdivision to the City of Fort Worth on May 30, 1985. This lot was adjacent to Lot 42, El Rancho Estates. The two properties had been historically divided by an old line fence put in place by a rancher many years prior to appellants and appellee coming into possession of their respective lots.

The jury in response to special issue no. 1 found that appellants held record title to Lot 14, Block 8, Lost Creek Addition. However, the jury found in answer to special issues nos. 2 and 3 that appellee held title by adverse possession of a small strip of land located on his side of the wire fence and within a ten foot utility easement which ran across the rear of appellants' lot.

Appellants' first point of error asserts that the trial court erred in refusing to enter judgment for appellants because the utility easement in question is a "public use" that would remove the limitation on actions in a trespass to try title action between private parties.

Texas law has long recognized that private easements are subject to adverse possession. *Walton v. Harigel*, 183 S.W. 785 (Tex.Civ.App.—Galveston 1916, no writ). However, TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.030(b) (Vernon 1986)[1] makes it clear that a person may not acquire through adverse possession any right or title to real property dedicated to public use. TEX.REV.CIV.STAT.ANN. art. 5517 (Vernon 1958), predecessor to section 16.-030, specifically referred to roads, streets,

---

1. TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.-030 codified TEX.REV.CIV.STAT.ANN. art. 5517. Although the wording in section 16.030 is shorter than article 5517, section 1.001(a) of the Civil Practice and Remedies Code specifically provides that the codification was not a substantive change in the law.

alleys, and sidewalks suggesting the statute was enacted to protect properties which provided open passageways for use by the general public.

An individual may adversely possess property subject to utility easements. *City of Lufkin v. Dupuy*, 327 S.W.2d 781, 783–84 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.); *Young v. City of Lubbock*, 130 S.W.2d 418, 420–21 (Tex.Civ.App.—Amarillo 1939, no writ). Although utilities that are granted easements are public utilities, they are privately owned companies and their easement rights are private. *Young*, 130 S.W.2d at 420. Additionally, land owned or dedicated to a city but not used or intended for use of a public purpose may be adversely possessed. *Brown v. Fisher*, 193 S.W. 357, 363 (Tex.Civ.App.—Beaumont 1917, writ ref'd).

In the instant case, TESCO is the only utility company to have an easement on the strip of land in issue. TESCO is a private corporation selling to a localized segment of the public. We do not find that TESCO's act of running a powerline through the strip of land constitutes a "public use" as contemplated by TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.030. Appellants' point of error one is overruled.

Appellants' next two points of error challenge the factual sufficiency of the evidence to support the jury's finding of adverse possession by appellee under both the ten year and the twenty-five year statute of limitations. In reviewing an assertion that the evidence is "insufficient" to support a finding of fact, we are required to consider all the evidence in the case. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

A claimant seeking to acquire title under TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.026 (Vernon 1986) has the burden of showing affirmatively that he has had continuous, exclusive, peaceful, and adverse possession of the land under a claim of right for not less than ten years. *Ramirez v. Wood*, 577 S.W.2d 278, 287 (Tex.Civ.App.—Corpus Christi 1978, no writ). "Claim of right" within the meaning of this statute means that the entry of the claimant must be with the intent to claim the land as his own, to hold it for himself and such must continue to be the nature of his possession. *Orsborn v. Deep Rock Oil Corp.*, 153 Tex. 281, 267 S.W.2d 781, 787 (1954). It is not necessary that the adverse claimant have knowledge that the claimed tract was part of the property to which an adjoining landowner had record title. *Butler v. Hanson*, 432 S.W.2d 559, 563–64 (Tex.Civ.App.—El Paso 1968), *rev'd on other grounds*, 455 S.W.2d 942 (Tex.1970). Rather, it is only necessary that the claimant thought he was the rightful owner and had no competition for that ownership, coupled with actual and visible possession and use. *Calfee v. Duke*, 544 S.W.2d 640, 642 (Tex.1976). It is this element of intent that appellants claim appellee and his predecessors lacked.

Under TEX.CIV.PRAC. & REM. CODE ANN. sec. 16.023 (Vernon 1986) the peaceable and adverse possession does not have to continue in the same person if there is privity of estate between each holder and his successor, in which event the claimant may tack the successive interests together. The issue of privity of possession in appellee's chain of title is undisputed. Since appellee had not been in possession of the property for ten years at the time of this suit, appellee must tack to Dr. Way's possession in order to meet the ten-year requirement.

Dr. Way testified that during the time he occupied the land he maintained the entire back part of the lot continually as a pasture. Dr. Way believed that he owned the strip of property in question because when he purchased the property the wire fence was represented as being the boundary line of his property. Appellee testified that when he purchased the property he continued to use and maintain this strip of property along the wire fence. Appellee used the entire back half of the property as pasture for his horses. He used the strip in question to maintain some natural landscaping as a visual barrier to the construction activity on the other side of the fence. Appellee also grew and gathered flowers along the strip.

Appellants rely on the following testimony of Dr. Way to support their contention that appellee lacked the necessary intention to adversely possess the strip of land:

Q. How long was it—When did you discover that there was extra property between your lot and the fence in question?

A. I never discovered that there was any.

Q. You never knew that that was not part of Lot 42?

A. No, I did not.

Q. So, as far as you were concerned, you were just claiming your property? You weren't claiming anybody else's property?

A. Correct.

Q. You weren't holding—didn't think you were holding property adverse to anybody else, did you?

A. Do you mean if they came on there and said they were going to get it, yes.

Q. No. I am saying you didn't intend to be occupying somebody else's property adverse to their rights, did you?

MR. ANDERSON: I object to that. I think he answered the question. Now, it's argumentative, Your Honor.

THE COURT: I overrule the objection.

A. (By the witness) Now, wait a minute. You are getting too many "adverses" on too many sides here. Could you restate that?

Q. Did you intend to claim somebody else's property in addition to your own by your use, or did you think you were just claiming your own property?

A. I was only claiming what was inside the fence which was, as I understood it, my property.

Q. And you thought you had a deed to it?

A. Yes.

. . . .

Q. (By Mr. Morris) Did you intend to adversely occupy somebody else's property and take it by adverse possession?

A. Not knowingly that it was somebody else's property.

This testimony only illustrates that Dr. Way did not know that the disputed strip of land was not part of his property. As previously mentioned the knowledge that the claimed property is that of another is not a prerequisite of adverse possession. Here, the record reflects appellee and his predecessor entered Lot 42, El Rancho Estate with the intent to claim the entire lot as their own up to the fence line. Appellee's intention to hold the disputed land as his own was manifested by his open and visible acts of maintaining the strip for a pasture, for a flower bed, and for a natural landscape. Additionally, the boundary line fence remained in place during the entire ten-year period.

The evidence demonstrates that appellee made out a prima facie case of his title to the strip of land in question under the ten year statute. Next, we must turn to the application of the twenty-five year statute to the facts of the present case.

■ TEX.CIV.PRAC. & REM.CODE ANN. sec. 16.028(b) (Vernon 1986) requires a claimant relying on the twenty-five year statute of limitations for adverse possession to come forward with a deed or some other type of instrument which purports to convey title to the land in question. Dr. Way testified that the deed he received for the property only covered Lot 42, El Rancho Estates and no extra property. Nor does the record disclose any other written instrument purporting to convey the disputed strip of land to Dr. Way. Therefore, the evidence supporting the jury finding of adverse possession under the twenty-five year statute of limitations is insufficient, and the finding should be set aside. However, since there was sufficient evidence, as previously discussed, to support the jury's finding of appellee's adverse possession under the ten year statute of limitations, the cumulative effect of the improper jury finding of appellee's adverse possession under the twenty-five year statute did not cause the rendition of an improper judgment. Appellants' points of error two and three are overruled.

Appellants assert in their last point of error that the trial court erred in finding that the property in question could be conveyed as part of Lot 42, El Rancho Estates because there was no replatting of a subdivision. Appellants argue that the only way the disputed property could have been conveyed to appellee, being that there existed no written instrument of conveyance, would be as part of Lot 42, El Rancho Estate which would have required a redefinition of the boundaries of such lot. Appellants' argument is without substance. The jury finding supported appellee's ownership of the contested strip of property by adverse possession. We find no authority that mandates the replatting of a subdivision to maintain the ownership of property acquired through adverse possession. Appellants' fourth point of error is overruled.

The trial court's judgment is affirmed.