NO. 12-03-00340-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
EOG RESOURCES, INC.,                                  §                APPEAL FROM THE 
APPELLANT
 
V.                                                                          §                COUNTY COURT AT LAW

TRAVIS WALL AND LAVERNE WALL,
APPELLEES                                                       §                PANOLA COUNTY, TEXAS
                                                                                                                                                              
OPINION
            EOG Resources, Inc. appeals from a summary judgment granted in favor of Travis and
Laverne Wall in its suit for conversion of gas or, alternatively, for breach of an oil and gas lease. In
six issues, EOG contends the summary judgment was improper because fact issues remain, the Walls
did not establish an affirmative defense, the trial court made erroneous evidentiary rulings, and the
summary judgment motions did not address the entire case. We reverse and remand.
 
Background
            EOG is the owner of a 1944 oil and gas lease that covers certain property in Panola County. 
Among the original lessors were Watley and Mildred Strong, Laverne Wall’s parents. The lease
covers three identified tracts of land and “all land owned or claimed by Lessor adjacent or contiguous
to the land particularly described.” At the center of the dispute here is the following lease provision: 
“Lessor shall have the privilege at his risk and expense of using gas from any gas well on said land
for domestic use in the principal dwelling thereon out of any surplus gas not needed for operations
hereunder.” The Walls, and others, have for years taken gas allegedly pursuant to this provision. EOG
disputes their right to do so. 
            EOG sued the Walls, and nine other defendants not party to this appeal, alleging that the
defendants converted gas from EOG’s wells. In the alternative, EOG alleged that if the defendants
were entitled to take any free gas pursuant to any written agreement or lease, they did so in violation
of the contractual provision and are therefore liable to EOG for breach of contract. EOG asked for
exemplary damages based on the defendants’ fraudulent or malicious acts. EOG also sought a court
order, allegedly pursuant to the terms of the lease, requiring defendants to acquire liability insurance
in connection with their use of the gas and execute an indemnification agreement to EOG. It also
asked for a declaration, pursuant to the Uniform Declaratory Judgments Act, clarifying the defendants’
acceptable use of gas under the lease. Further, EOG requested a permanent injunction enjoining
defendants from taking gas that they are not entitled to take and from taking gas until they have
furnished EOG an insurance policy in an amount of at least twenty million dollars.
            The Walls filed a single document entitled “Traditional & No Evidence Motions for Summary
Judgment.” In their first argument, they asserted that a 1944 oil and gas lease gives EOG permission
to draw gas from their land and gives the Walls the right to take a portion of the gas produced on their
land and use it in their home. They argued that there is no evidence that EOG is entitled to the gas the
Walls use in their home and, therefore, the conversion claim must fail. Further, they asserted
entitlement to a traditional summary judgment because they conclusively established that they have
the right, under the lease, to use the gas in their home, thereby defeating the conversion and breach
of contract claims. In their second argument, the Walls asserted that their use of the gas was ratified
by the Estate of R.E. Smith, EOG’s predecessor in interest. A 1979 agreement between the Estate and
the Walls recited that the Walls desired, pursuant to the terms of the 1944 lease, to obtain gas for their
personal, domestic use and, therefore, a Smith representative would show them where they could tap
into the gas line. In return, the Walls agreed to hold the Estate harmless in the event of an accident. 
Finally, the Walls asserted that, as they have been using the gas since 1959, they have established the
defense of adverse possession.
            As summary judgment evidence, the Walls presented the 1944 lease, the 1959 deed conveying
to them the surface estate of their 2.72 acres, a 1982 deed conveying to them an undivided mineral
interest in 41.15 acres, the 1978 agreement with the Smith Estate, Travis Wall’s deposition testimony,
and EOG’s answers to interrogatories.
            EOG filed a response asserting that there are several questions of fact precluding a summary
judgment. In support of its response, EOG filed the affidavit of Warren J. Davis, Division Land
Manager for EOG. His affidavit was accompanied by a copy of the 1944 lease, a letter from EOG to
the Walls explaining that delivery of gas into the line used by the Walls would cease, two plats
showing the John Morris Survey A-446, and the 1978 Smith Estate agreement. EOG also offered
excerpts from Travis Wall’s deposition testimony, EOG’s answers to interrogatories, the affidavit of
J.D. Huppler, EOG’s Vice President and General Manager, and two liability insurance policies
showing Travis Wall’s coverage limits. 
            EOG filed a motion for leave to file a supplemental response and supplemental exhibits
including the deed conveying the Walls’ property to them, a portion of Travis Wall’s deposition
testimony, the 1982 deed conveying mineral rights in certain property to the Walls, a portion of the
deposition testimony of Sam Strong, Laverne Wall’s brother, and affidavits of Bill H. Burton and
Warren J. Davis. The trial court denied this motion.
            In its order disposing of the case, the trial court granted the Walls’ objections to the affidavits
of Jack Huppler and Warren Davis and excluded those affidavits to the extent they offer opinions on
the meaning of the term “surplus gas.” It granted the Walls’ objections to portions of the affidavit of
Warren Davis that refer to, describe, or in any way rely on the opinions of Bill Burton, or any plat
prepared by Bill Burton, and excluded those portions of the Davis affidavit. The court granted the
Walls’ “traditional” and “no-evidence” motions for summary judgment, dismissed EOG’s claims
against the Walls, and severed the claims against the Walls from the remaining defendants.
 
Admissibility of Evidence
            In its fifth issue, EOG asserts the trial court erred in striking portions of its summary judgment
evidence without allowing it the opportunity to cure the alleged defects. The Walls objected to EOG’s
affidavits claiming they contained hearsay and legal conclusions and were not based on personal
knowledge. EOG contends these are defects in form, which are curable. Accordingly, it argues, the
trial court erred when it denied leave to file supplemental evidence tendered in an attempt to cure. 
            The Walls lodged hearsay objections against the affidavit of Warren Davis because Davis
interpreted a plat he did not prepare. EOG asked leave to file a supplemental response and an affidavit
by Bill Burton, the surveyor who prepared the plat, in an attempt to cure the alleged error. The trial
court denied leave to supplement, granted the Walls’ objections to the portions of the affidavit that
refer to, describe, or in any way rely on the opinions of Bill Burton, or any plat prepared by Bill
Burton, and excluded those portions of the Davis affidavit. EOG argues that the tendered, non-hearsay
Burton affidavit showed that the Walls’ home is not on the leased land. Therefore, if in evidence, the
argument continues, it would have raised a fact question as to the applicability of the lease to the
Walls’ property.
            Further, the Walls objected to the affidavits of Jack Huppler and Warren Davis, claiming they
contained legal conclusions and were not based on personal knowledge. The trial court granted the
Walls’ objections and excluded those affidavits to the extent they offer opinions on the meaning of
the term “surplus gas” as used in the lease. EOG tendered a supplemental affidavit of Davis to clarify
his level of expertise and to explain the meaning of the term “surplus gas.”
            Affidavits filed to support or oppose a motion for summary judgment must be made on
personal knowledge and set forth such facts as would be admissible in evidence. Tex. R. Civ. P.
166a(f). Complaints that an affidavit contains hearsay or is not based on personal knowledge raise
defects of form. Youngstown Sheet & Tube Co. v. Penn, 363 SW.2d 230, 234 (Tex. 1962); Hou-Tex, Inc. v. Landmark Graphics, 26 S.W.3d 103, 112 n.9 (Tex. App.–Houston [14th Dist.] 2000, no
pet.). Defects in the form of affidavits may be grounds for reversal if specifically pointed out by
objection by an opposing party with opportunity, but refusal, to amend. Tex. R. Civ. P. 166(f). The
trial court should allow supplementation to cure defects of form. See Webster v. Allstate Ins. Co., 833
S.W.2d 747, 749-50 (Tex. App.–Houston [1st Dist.] 1992, no writ). 
            In his affidavit, Bill Burton explained that he performed a survey of the lands covered by the
1944 lease and prepared a plat showing the boundaries of the land involved. After locating on the
ground the houses owned by the Walls, he determined that those houses are not within the boundaries
of the land identified in the lease. This affidavit cured the hearsay objections to references to the plat
made by Davis in his original affidavit.
            In his supplemental affidavit, Davis stated that he has been a landman in the oil industry in
East Texas since 1981 and is familiar, through his experience, with the term “surplus gas.” He went
on to explain the term’s meaning. Assertions founded on his personal experience in the oil industry
in East Texas for twenty years, and particularly based on his employment with EOG, are sufficiently
based on personal knowledge as required by the rule. See Lujan v. Tampo Mfg. Co., 825 S.W.2d 505,
509 (Tex. App.–El Paso 1992, no writ); City of Dallas v. Continental Airlines, Inc., 735 S.W.2d 496,
501 (Tex. App.–Dallas 1987, writ denied). Therefore, Davis’s supplemental affidavit cured the
personal knowledge objection to his original affidavit. Further, in order for the trial court to determine
if the Walls complied with the terms of the lease and properly analyze whether the lease was
ambiguous, it needed to first determine whether there is a definite legal meaning or interpretation for
the term “surplus gas.” See Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983) (Even if neither party
pleads ambiguity, a trial judge may conclude a contract is ambiguous.).
            The Walls rely on the 1944 lease to claim entitlement to free gas from EOG’s lines. Therefore,
EOG’s proffered evidence raising fact questions as to the applicability of the lease to the Walls’ home
and whether the gas taken meets the definition of the term “surplus gas” as used in the lease
constituted proper summary judgment evidence. The trial court erred in failing to allow EOG to
supplement its evidence to cure formal defects in the previously submitted affidavits. See id. We
sustain EOG’s fifth issue.
 
Conversion and Breach of Contract
            In its first, second, and third issues, EOG asserts the trial court erred in granting the Walls’
motion for summary judgment because fact issues remain on the conversion and breach of contract
claims. It argues that, although the lease states that its provisions “shall extend to the heirs, successors
and assigns of the parties hereto,” the Walls have not conclusively established that they are the heirs
or successors to the Strongs’ rights in the 1944 lease. EOG also questions whether their home is
located on the leased land. Further, EOG argues that the Walls’ uses of gas do not fit within the
limited right that the lease’s free-gas proviso affords. EOG asserts that the Walls improperly took gas
for two houses and a greenhouse. EOG contends that affidavit testimony proves it owns all the gas
produced except for the limited possibility of a lessor’s domestic use, in one principal dwelling, of
surplus gas not needed for operations, produced from a well on the leased land. In sum, EOG asserts
that the summary judgment evidence raises numerous fact questions regarding the applicability of the
lease and the Walls’ compliance with its terms.
Standard of Review
            In a “no-evidence” summary judgment, a party is entitled to summary judgment if there is no
evidence of one or more essential elements of a claim or defense on which an adverse party would
have the burden of proof at trial. Tex. R. Civ. P. 166a(i). We view the evidence in the light most
favorable to the non-movant, disregarding all contrary evidence and inferences. King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 124 S. Ct. 2097 (2004). In reviewing a
no-evidence summary judgment, we apply the same legal sufficiency standard as a directed verdict. 
Id. at 750-51. A no-evidence summary judgment is improperly granted if the respondent brings forth
more than a scintilla of probative evidence to raise a genuine issue of material fact. Id. at 751. More
than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions. Id.
            To obtain a “traditional” summary judgment, the movant has the burden of showing that there
is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ.
P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true. Nixon v. Mr. Prop. Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. Id. Summary judgment for a defendant is proper when
the summary judgment evidence negates an essential element of the plaintiff’s cause of action as a
matter of law or conclusively establishes all elements of an affirmative defense as a matter of law. 
See Black v. Victoria Lloyds Ins. Co, 797 S.W.2d 20, 27 (Tex. 1990). Once the defendant produces
sufficient evidence to establish the right to summary judgment, the burden shifts to the non-movant
to produce controverting evidence raising a fact issue as to the elements negated. Torres v. Western
Cas. & Sur. Co., 457 S.W.2d 50, 52 (Tex. 1970); Owen Elec. Supply, Inc. v. Brite Day Constr. Inc.,
821 S.W.2d 283, 286 (Tex. App.–Houston [1st Dist.] 1991, writ denied).
            When the order granting summary judgment does not specify the particular grounds the trial
court sustained, on appeal, the summary judgment opponent must defeat each summary judgment
ground argued by the movant. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). Otherwise, an
appellate court must uphold the summary judgment on any ground that is supported by the evidence
and pleadings. Id.
Conversion
            Conversion is the wrongful exercise of dominion and control over another’s property in denial
of or inconsistent with his rights. Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 210 (Tex.
2002). To recover on a claim of conversion of property, the plaintiff has the burden to prove that he
is the owner of the property alleged to have been converted. Russell v. City of Bryan, 919 S.W.2d
698, 704 (Tex. App.–Houston [14th Dist.] 1996, writ denied).
Contract Construction
            The interpretation of an agreement is purely a question of law. Columbia Gas Transmission
Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 589 (Tex. 1996). We review lease-construction
questions de novo. Anadarko Petroleum Corp. v. Thompson, 94 S.W.3d 550, 554 (Tex. 2002). In
construing a lease, the court seeks to determine the intent of the parties as that intention is expressed
in the lease. See Sun Oil Co. v. Madeley, 626 S.W.2d 726, 727-28 (Tex. 1981). 
Discussion
            The Walls’ initial argument in their motions for summary judgment was that EOG could
produce no evidence that it was the owner of the gas the Walls used in their home. They argued that
EOG has no documents to prove its ownership and, moreover, that the 1944 lease gives the Walls the
right to the gas. EOG responded that the lease is the document that proves EOG’s ownership of the
gas. It asserted that it owns the lease and that the Walls have not proven themselves to be the heirs
or successors in interest of the original lessors. The Walls agreed that EOG is the original lessee’s
successor in interest but disagreed as to the lease’s application. They contended they have properly
taken gas pursuant to the unambiguous lease. They also argued that their 1979 agreement with the
Smith Estate indicates they have a right to the gas pursuant to the 1944 lease.
            Two of the original six lessors were Mildred and Watley Strong, Laverne Wall’s parents. By
its terms, the lease’s provisions extend to the Strongs’ heirs and successors in interest. There is no
documentation in the record, however, to show whether the Walls, or someone else, are their heirs or
successors in interest. The location of the Walls’ property also raises a fact question. The Walls live
on a 2.7 acre plot of land deeded to them by the Strongs in 1959. The lease described the three tracts
of land that it covered. EOG tendered evidence, the Davis and Burton affidavits and accompanying
plat, asserting that the Walls’ residence was not located on property covered by the lease. Further,
even if the Walls’ are the Strongs’ heirs and successors in interest, and the land is covered by the lease,
there is a question of fact regarding whether the Walls’ home qualifies as the “principal dwelling”
referred to in the lease. Travis Wall stated in his deposition that the Strong’s original home was
located where his greenhouse presently is located. Possibly, that house was the “principal dwelling”
in 1944. The Walls built their home in 1959. At some point after 1959, the Strongs’ home burned
and they built another home beside the Walls’ home. 
            The benefit created by a free gas clause is deemed a covenant running with the surface estate
of the property. Thomas v. Thomas, 767 S.W.2d 507, 509 (Tex. App.–Amarillo 1989, writ denied). 
The surface estate receives the benefits and the mineral estate has the burden. Id. Where, as here, the
free gas clause is limited to the “principal dwelling,” that burden to the mineral estate cannot be
extended to additional dwellings without the consent of the lessee. Id. at 509-10. The right to take
free gas under a free-gas clause in an oil and gas lease is transferrable and assignable as is any other
property interest. Id. at 510. However, under the terms of the lease, there can be only one principal
dwelling. Travis Wall’s deposition testimony raises a question as to which home is the “principal
dwelling.” See id. (The court determined that the “principal dwelling” was the first home built on the
property, which continued to be owned by successors in interest to the surface estate even though it
had been vacant for years.).
            Further, EOG argues that the Walls did not prove that the gas they take is “surplus gas” within
the meaning of the lease. Both sides assert that the lease is unambiguous. EOG submitted affidavits
by Huppler and Davis explaining that the term means gas produced in excess of that needed for
operations and that cannot be sold, that would normally be flared or vented. In his deposition
testimony, Travis Wall said he did not know how to define “surplus gas” but it means there is enough
gas for use in his home. As the lease limits any use of free gas to “surplus gas,” the meaning of the
term must be determined. The trial court did not consider EOG’s evidence on this issue. EOG’s
summary judgment evidence raised fact questions as to the meaning of the term “surplus gas” and
whether the gas taken by the Walls was surplus gas.
            On its face, the lease does not support the Walls’ contentions. Further, we disagree with their
assertion that the 1979 agreement proves they rightfully take gas pursuant to the lease. That agreement
states that, pursuant to the 1944 lease, the Walls desire to obtain gas for use in their home. This is
proof only that, in 1979, the parties to the agreement believed the 1944 lease applied to the Walls. 
Accordingly, the Walls did not prove they had the right to the gas under the lease. Further, EOG
presented more than a scintilla of evidence indicating that the Walls may not have that right. We
conclude that fact questions exist regarding whether the Walls live on the surface estate covered by
the lease, whether their home is the principal dwelling, whether the gas they take is “surplus gas,” and
even whether they are the heirs or successors to the Strongs’ rights. Therefore, the order granting the
Walls’ no-evidence and traditional motions for summary judgment was improper to the extent it rested
on their arguments that the conversion and breach of contract claims cannot stand. See Chapman, 118
S.W.3d at 751; Black, 797 S.W.2d at 27. We sustain EOG’s first, second, and third issues.
 
Affirmative Defenses
Ratification
            In its fourth issue, EOG contends the Walls failed to exclusively establish the affirmative
defense of ratification. The Walls relied on their 1979 agreement with the Smith Estate to assert that
their use of the gas was ratified. EOG argues that the Walls did not comply with the agreement, any
ratification was personal to Smith, there is a fact issue regarding whether Smith was acting upon a
material mistake of fact, and EOG revoked any permission to take gas that Smith may have granted
the Walls. 
            Ratification is the adoption or confirmation, by one with knowledge of all material facts, of
a prior act which did not then legally bind that person and which that person had the right to repudiate. 
Enserch Corp. v. Rebich, 925 S.W.2d 75, 84 (Tex. App.–Tyler 1996, writ dism’d by agr.) (op. on
reh’g). Assuming the 1979 agreement resulted in ratification by the Smith Estate of the Walls’ use
of free gas pursuant to the lease, that ratification cannot be extended to bind EOG. Actions taken by
prior owners are not binding on a subsequent owner because the prior owners were not agents of the
subsequent owners and were not acting on their behalf. Id. If the trial court granted the Walls’
motions for summary judgment based on their ratification theory, it did so erroneously.
Adverse Possession
            Also in its fourth issue, EOG contends the Walls did not prove their affirmative defense of
adverse possession. It asserts they did not show continuous, visible, or hostile possession or a claim
of exclusive ownership. EOG argues that the Walls’ characterization of their use of the gas as
permissive concedes the true owner’s right to withdraw that permission. Further, the line was buried
and there is no evidence Smith ever knew of its existence. EOG also argues that the 1979 agreement
did not indicate any present use, only the desire for a future tap. Finally, EOG contends that one
cannot adversely possess a use or service and it would be burdensome to prove adverse possession of
natural gas.
            The right to free gas under an oil and gas lease is an interest in real property that can be
acquired or lost by adverse possession under applicable statutes of limitations. Thomas, 767 S.W.2d
at 510. Adverse possession means “an actual and visible appropriation of real property, commenced
and continued under a claim of right that is inconsistent with and is hostile to the claim of another
person.” Tex. Civ. Prac. & Rem. Code Ann. § 16.021(1) (Vernon 2002). Section 16.028 of the
Texas Practice and Remedies Code provides a twenty-five-year limitation period for actions involving
adverse possession by one holding the property in good faith under a recorded instrument. Tex. Civ.
Prac. & Rem. Code Ann. § 16.028 (Vernon 2002). Section 16.028 requires a claimant relying on
the twenty-five-year statute of limitations for adverse possession to come forward with a deed or some
other type of instrument that purports to convey title to the property in question. Id.; Boyle v. Burk,
749 S.W.2d 264, 267 (Tex. App.–Fort Worth 1988, writ denied). The Walls, as movants, had the
burden of showing as a matter of law that the suit is barred by limitations. Rogers v. Ricane Enter.,
Inc., 772 S.W.2d 76, 80-81 (Tex. 1989).
            The Walls claim the right to free gas pursuant to the 1944 lease. However, whether that
document conveys that interest to the Walls is one of the paramount issues presented in this case. 
Therefore, the lease cannot be relied on as proof of a conveyance to prove adverse possession. The
Walls did not show, as a matter of law, that the suit is barred by limitations. See Boyle, 749 S.W.2d
at 267. As the Walls did not meet their burden to prove the affirmative defenses of ratification and
adverse possession, the summary judgment should not have been granted on these grounds. We
sustain EOG’s fourth issue.
Pending Claims
            In its sixth issue, EOG asserts the trial court erroneously granted summary judgment on a claim
not addressed by the motion for summary judgment. It argues that it pleaded for declaratory
relief/specific performance of the lease’s requirement for insurance and indemnity but the summary-judgment motion ignores the claim.
            A summary judgment cannot dispose of causes of action not addressed in the motion for
summary judgment. Ecotech Int’l, Inc. v. Griggs & Harrison, Inc., 928 S.W.2d 644, 649-50 (Tex.
App.–San Antonio 1996, writ denied). In its petition, EOG sought specific performance in terms of
an order for the Walls to obtain liability insurance in connection with their use of gas and an order for
them to execute and deliver a full and complete indemnification and hold harmless agreement to EOG
in connection with their use of the gas. EOG further pleaded, pursuant to the Uniform Declaratory
Judgments Act, for a declaration specifying what, if any, usage of free gas the Walls are entitled to
under the lease. Further, EOG requested a permanent injunction enjoining the Walls from taking gas
from EOG’s wells or, if a contractual right to take gas exists, an injunction enjoining them from taking
gas until they have furnished a policy of liability insurance in an amount of at least twenty million
dollars. These claims were not addressed in the motions for summary judgment and cannot be covered
by the summary judgment. Id. We sustain EOG’s sixth issue.
 
Conclusion
            The trial court erred in failing to allow EOG the opportunity to cure the errors in the form of
its evidence. Because the Walls did not meet their burden to show entitlement to judgment as a matter
of law, material fact questions exist, and the motions did not address all of EOG’s claims, the trial
court erred in granting the Walls’ motions for no-evidence and traditional summary judgment. We
reverse the trial court’s judgment and remand this case for further proceedings consistent with this
opinion.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered February 10, 2005.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
(PUBLISH)