**MAVEX MANAGEMENT CORPORATION d/b/a Mockingbird Management Company and Twenty One High, L.P., Appellants**

v.

**HINES DALLAS HOTEL LIMITED PARTNERSHIP, Hines Dallas Hotel Management, LLC, Hines Interests Limited Partnership, Hines Holdings, Inc., Hines "X" Corporation, and Hines "Other" Corporation, Appellees.**

No. 05–09–01281–CV.

Court of Appeals of Texas, Dallas.

Aug. 28, 2012.

K. Douglas Perrin and Jerry Mark Perrin, The Perrin Law Firm, P.C., Matthew A. Nowak, Nowak & Stauch, Dallas, TX, for Appellants.

George C. Lamb III and Anika Christine Stucky, Baker Botts L.L.P., Dallas, TX, for Appellees.

Before Justices MORRIS, MOSELEY, and LANG–MIERS.

## OPINION

Opinion By Justice MORRIS.

This is a summary judgment case. Mavex Management Corporation d/b/a Mockingbird Management Company and Twenty One High, L.P, challenge the trial court's take-nothing summary judgment on their fraud and promissory estoppel claims arising out of their purchase of an unimproved tract of land and an undivided parking interest in an adjacent tract from Hines Dallas Hotel Limited Partnership. In five issues, appellants generally assert that the trial court erred in granting the adverse summary judgment because they presented sufficient evidence to defeat appellees' no-evidence motion and because appellees did not establish their entitlement to summary judgment based on affir-

mative defenses and other issues they raised as grounds in their traditional motion. For the reasons that follow, we affirm the trial court's judgment.

## I.

This dispute arises out of appellants' plans to construct a residential condominium tower on an unimproved tract in a development known as Galleria North. Galleria North is comprised of the unimproved tract, two adjacent tracts on which office towers referred to as Tower I and Tower II are located, and a tract containing a parking deck in which each of the other tracts had an interest. In March 2004, appellants executed an agreement to purchase from Hines Dallas Hotel Limited Partnership a 0.9368-acre unimproved lot and a 10.37-percent undivided interest in an adjacent parking tract and parking deck.[1] Appellants intended to build a condominium project on the property. In the sale and purchase agreement, appellants acknowledged that the property was subject to a Reciprocal Easement Agreement (REA) among the owners of Tower I, Tower II, and the unimproved tract that, among other things, governed the development of the unimproved tract as well as the use of the adjacent parking deck. Under the existing REA, a condominium was not a permitted use for the unimproved tract.[2] Accordingly, the sale and purchase agreement provided a procedure for amending the REA to allow the construction and operation of a condominium. The sales and purchase agreement further provided that in the event Hines Dallas Hotel was unable to obtain by a certain date "a fully executed REA amendment acceptable to [appellants] and the REA Parties in their sole and absolute discretion," appellants could terminate the sale and purchase agreement. In May 2004, appellants submitted drawings of a 126-unit residential condominium tower to the City of Dallas for site plan approval, which the City granted on June 22, 2004, before the REA amendment was finalized. Appellants' plans indicated that the condominium would require 252 spaces in the parking garage for the condominium units and 57 parking spaces for the condominium community center. An amended REA was signed and recorded on October 12, 2004.[3] The amended REA added development of residential condominiums as an allowable use for the unimproved tract. Although the City approved a site plan, the amended REA indicated that, "[t]he Hotel/Condo Plans, whether for the Hotel or the Condo, do not yet exist and must be prepared and approved in accordance with this REA."

The sale and purchase agreement was closed in November 2004.[4] At the time of closing, Tower I was owned by Franklin Street Properties Corporation and Tower II was owned by RREEF Galleria North

---

1. According to the Agreement of Sale and Purchase, Hines Dallas Hotel Limited Partnership was the seller of the property and Mockingbird Management Company was the purchaser. However, the deed transferring title to the property from Hines Dallas Hotel describes Twenty One High, L.P. as the grantee.

2. The existing REA contemplated the construction of a hotel on the property.

3. Hines Corporate Properties, LLC signed on behalf of the Tower I owner, Texas Corporate

Properties, L.P.; RREEF America REIT Corp. EE signed on behalf of the Tower II owner, RREEF Galleria North Tower II, L.P.; and Hines Holdings, Inc. signed on behalf of the unimproved tract owner Hines Dallas Hotel Limited Partnership.

4. Although the deed conveying the property is dated November 12, 2004, several other documents in the summary judgment record suggest that the closing took place on November 16, 2004.

Tower II, L.P. There is nothing in the record suggesting that appellants' condominium plans were approved by the Tower I and Tower II owners in accordance with the amended REA before the closing of the purchase. Also around the time of closing, a representative of appellees wrote to the owners of Towers I and II on appellants' behalf noting that, although the REA provided the condominium tower 240 parking spaces plus an additional twenty parking spaces on the parking deck roof for its use after normal business hours, appellants were requesting access to an additional thirty-seven parking spaces in the parking deck after normal business hours. Appellants closed on their purchase of the property without ever reaching an agreement on these additional spaces. In April 2005, Franklin Street conditionally approved appellants' construction plans. RREEF, however, did not.

More than seven months after the closing, in June 2005, RREEF sold Tower II to an entity managed by Metzler Realty Advisors, Inc. Appellants' condominium plans were provided to Metzler for approval. Metzler ultimately refused to approve the plans asserting, among other things, that the amended REA did not allocate 240 parking spaces in the parking deck for the exclusive use of the condominium tower as appellants' plans specified. Metzler asserted that the amended REA provided only 220 parking spaces for the condominium's exclusive use, plus an additional twenty spaces to be used by the condominium tower after normal business hours. Appellants then demanded arbitration against Metzler seeking, among other things, a declaration that their construction plans with 240 exclusive condominium parking spaces and fifty-seven shared condominium spaces complied with the amended REA. After a hearing, the arbitration panel issued its award in May 2006

denying all relief requested by appellants. Appellants filed this lawsuit against appellees in November 2006.

In their live pleading, appellants allege that before they executed the sale and purchase agreement, they discussed with—and submitted design and construction plans to—appellees, RREEF, and Franklin Street for the proposed residential condominium tower. Additionally, appellants allege that the plans specified 240 parking spaces in the parking deck for the condominium's exclusive use, twelve surface parking spaces at the base of the residential tower, and fifty-seven part-time parking spaces on the top level of the parking deck. Appellants further allege that during their negotiations and discussions before and after they signed the sale and purchase agreement, appellees assured appellants that the plans "were acceptable to [appellees], that the Amended REA provided for 240 exclusive use parking spaces in the Parking Deck as specified by the Condo Plans, and that to the extent necessary the other property owners in Galleria North had approved and/or would approve the Condo Plans' designation of 240 parking spaces in the Parking Deck dedicated for exclusive use by the residential condominium tower." Appellants also allege that they relied on appellees' approval of the condominium plans and appellees' representations with respect to (1) the number of parking spaces in the parking deck for the condominium tower's exclusive use and (2) the approvals of the other property owners in closing the purchase. Appellants asserted causes of action for breach of contract, promissory estoppel, negligence, negligent misrepresentation, common law fraud, and statutory fraud.

Appellees moved for summary judgment on all of appellants' causes of action asserting both traditional and no-evidence

grounds. The trial court granted a take-nothing summary judgment on all of appellants' causes of action. Appellants filed this appeal challenging the trial court's summary judgment with respect to their common law fraud and promissory estoppel claims only.[5]

## II.

We review de novo the trial court's summary judgment, examining the entire record in the light most favorable to the nonmovant, indulging every reasonable inference in its favor, and resolving any doubt against the movant. *See Kalyanaram v. Univ. of Tex. Sys.*, 230 S.W.3d 921, 925 (Tex.App.-Dallas 2007, pet. denied). When a motion for summary judgment presents both no-evidence and traditional grounds, we first review whether the summary judgment is sustainable under the no-evidence grounds. *Id.* A no-evidence summary judgment will be affirmed unless the nonmoving party brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact on each challenged element of its cause of action. *Id.*

The elements of a promissory estoppel claim are a promise, foreseeability of reliance thereon by the promisor, and substantial detrimental reliance by the promisee. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex.1983). A fraud cause of action requires a material representation, that (1) was false, (2) was known to be false when made or recklessly asserted without knowledge of its truth, (3) intended to be acted upon, (4) actually relied upon, and (5) caused injury. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). A central element of appellants' fraud and promissory estoppel claims is a reasonable and justified reliance upon a misrepresentation or promise. *See Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex.1997) (fraud); *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 304 (Tex.App.-Dallas 2009, no pet.) (promissory estoppel).

In response to appellees' no-evidence summary judgment on its fraud and promissory estoppel claims, appellants relied primarily on the affidavit of Mitchell A. Vexler, president of MMC and Twenty One High L.P.'s general partner.[6] The vast majority of Vexler's affidavit, however, is nothing more than sworn repetitions of the conclusory allegations of appellants' pleadings together with string citations to fifty documents attached to the affidavit. Vexler merely states that in closing the purchase of the tract and in their post-closing efforts to develop the condominium tower, appellants relied on the following three "assurances" made by appellees before and after execution of the sale and purchase agreement: (a) appellants' condominium plans were acceptable to appellees, (b) the amended REA provided 240 exclusive use parking spaces in the parking deck as specified in the condominium plans, and (c) to the extent necessary, the other Galleria North property owners had approved or would approve the plans' designation of 240 exclusive use parking spaces in the parking deck for the condo-

---

5. Appellants do not challenge the trial court's summary judgment with respect to their breach of contract, negligence, statutory fraud, and negligent misrepresentation claims. Accordingly, appellants have waived error, if any, with respect to the trial court's disposition of these claims. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655 (Tex.2001).

6. Appellants' only other summary judgment evidence consisted of transcript excerpts from the depositions of two architects and arbitration transcripts from an architect and an employee of Hines Interests Limited Partnership.

minium tower. Other than Vexler's conclusory statements, appellants did not identify with any specificity when the above statements were allegedly made, nor did they indicate what specific actions appellants took in reliance on the alleged statements. And none of the approximately 662 pages of documents attached to Vexler's affidavit provide independent support that the above statements were actually made to appellants and provide little, if any, context as to when or in what circumstances these statements were made. Conclusory affidavits such as Vexler's do not raise fact issues. *See Ryland Group. Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex.1996). Vexler's affidavit was therefore insufficient to defeat appellees' no-evidence motion for summary judgment on appellants' fraud and promissory estoppel claims. Moreover, after reviewing appellants' summary judgment evidence in its entirety, we conclude the trial court did not err in granting summary judgment on these claims for the following additional reasons.

■ With respect to the first alleged statement, appellants have provided no evidence suggesting it was false or demonstrating appellees did not accept or approve of appellants' condominium plans. In fact, there is nothing in the record to suggest that appellees, as sellers of the property, had to accept or approve appellants' condominium plans for appellants' project to proceed. Accordingly, this statement cannot be the basis for appellants' fraud or promissory estoppel claim.

■ We next address appellees' alleged statement with respect to the other Galleria North property owner's approval of appellants' construction plans that designated 240 exclusive use parking spaces in the parking deck. Appellants' summary judgment evidence demonstrates the owners of Tower I conditionally approved appellants' construction plans in a letter dated April 29, 2005. That letter also indicates that the amended REA allows 240 spaces in the parking deck for a condominium tower and allows twenty additional parking spaces in the parking deck to be used after business hours. Moreover, the summary judgment evidence indicates that the owner of Tower II before and at the time of closing was RREEF Galleria North Tower II, L.P. Although it appears RREEF ultimately refused to approve appellants' construction plans, there is no summary judgment evidence that RREEF's refusal was based on the plans' designation of 240 parking spaces in the parking deck for the condominium's exclusive use. As noted above, Tower II was purchased by Metzler seven months after appellants closed on the property. It was Metzler that ultimately refused to approve appellants' construction plans, based in part on its contention that the amended REA did not allocate 240 exclusive use parking spaces to the condominium tower. Appellants have provided no evidence that this representation by appellees included the approval of future tower owners after appellants closed the purchase.

■ Finally, we turn to appellees' alleged statement to appellants that the amended REA provided 240 exclusive use parking spaces in the parking deck for the benefit of the condominium tower. Even assuming that appellees made such a statement to appellants, they have provided no evidence that appellees knew the statement was false when made or that it was recklessly asserted. To the contrary, the summary judgment record indicates that no party questioned the condominium tower's entitlement to 240 exclusive parking spaces under the amended REA until sometime after Metzler's refusal to approve appellants' construction plans, ap-

proximately nine months after appellants closed the purchase on the property. To the extent that appellants utilize this statement as a basis for their promissory estoppel claim, we note the following. In the trial court, appellants specifically asserted in their summary judgment response that their promissory estoppel claim was based on promises made *after* the closing of the transaction and were "separate from and in addition to [appellants'] claims based on the purchase agreement and the Amended REA." Appellants have provided no summary judgment evidence of how they detrimentally relied on alleged post-closing promises that the amended REA provided the condominium tower with 240 exclusive use parking spaces in the parking deck.[7]

Because appellants failed to present sufficient summary judgment evidence to create a fact issue on all of the challenged elements of their promissory estoppel and fraud claims, the trial court did not err in granting summary judgment on these claims. In reaching this conclusion, we note that appellants have raised several issues on appeal that were not raised in the trial court. First, appellants contend that absent sufficient evidence for fraud, we still must reverse the trial court's summary judgment because there was sufficient evidence of mutual mistake. Appellants did not plead mutual mistake nor did they present the mutual mistake argument to the trial court in their response to appellees summary judgment motion. Likewise, appellants' argument on appeal suggesting their promissory estoppel claim is based on pre-closing promises is directly controverted by their summary judgment response in the trial court. To the extent appellants assert that certain statements contained in the sale and purchase agreement or the amended REA itself are representations on which they base their claims, these issues were not raised in their summary judgment response. Finally, appellants' contention that they asserted causes of action for legal fraud and fraud by nondisclosure in addition to their claims for common law fraud and promissory estoppel is not supported by their live pleading or their summary judgment response. Because none of these issues were presented to the trial court in appellants' summary judgment response, they cannot be the basis for reversing the trial court's summary judgment. *See* TEX.R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979) (except for those challenging the legal sufficiency of movant's summary judgment proof, issues not expressly presented to the trial court in a written response shall not be considered as grounds for reversal). Having concluded the trial court's summary judgment is supportable on the no-evidence grounds, we need not address appellants' complaints with respect to appellees' traditional motion for summary judgment.

Appellants also present two arguments challenging the attorney's fees the trial court awarded to appellees after a jury trial on the issue. We do not address appellants' first argument because it is dependent upon a reversal of the trial court's summary judgment. Appellants next contend the trial court's award was

---

7. In their summary judgment response, appellants argued, in addition to Vexler's affidavit, that a set of construction plans dated September 7, 2004, building permits issued by the City of Dallas on March 29, 2005, and a letter appellees wrote to RREEF on March 8, 2004 regarding appellants' construction plans were evidence of the reliance element needed for their promissory estoppel and fraud claims. Of these items, only the issuance of building permits occurred after the closing. The building permits alone, however, are no evidence that appellants relied on this alleged post-closing promise.

improper because the sale and purchase agreement's provision on which it is based did not survive the closing of the purchase. Because our review of the record reveals appellants never raised this issue in the trial court, they have waived this complaint. *See* TEX.R.APP. P. 33.1.

Having resolved all properly preserved issues against appellants that are necessary to the disposition of this appeal, we affirm the trial court's judgment.