

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00180-CV

_____

JON HOBSON, Appellant

V.

DARRELL FRANCIS AND CATHERINE FRANCIS, Appellees

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV17-0052

---

Before Sudderth, C.J.; Kerr and Pittman, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

The underlying case involved whether the owner of a landlocked tract has an easement by necessity against the adjacent property owners from whom the owner's father initially acquired the tract, when for over thirty years that owner's father had accessed two of the three possible public roads by crossing other adjoining tracts.

But whatever the merits of Jon Hobson's claim to a necessity easement, this case's procedural posture neither requires nor allows us to reach those merits, and so we will affirm the summary judgment in favor of Darrell and Catherine Francis, the defendant–appellees who in 1978 severed and sold, from their larger landholdings, the tract now owned by plaintiff–appellant Hobson.

### Chronology and Background

We preface the sequence of events and give context to the facts of this dispute by reproducing the hand-drawn map attached to Hobson's affidavit responding to the Francises' summary-judgment motion:



**1965:** The Francises bought Tract 2.

**1973:** The Francises bought Tract 1 and, until they sold it five years later, accessed Highway 281 from Tract 1 by a "lane" across Tract 3.

**1978:** The Francises sold Tract 1 to Hobson's father. At the time of this transaction and for at least 12 years afterwards, the then-owner of Tract 3, Jack Patton, allowed Hobson's father to use the existing private road across Tract 3 to get

3

to Highway 281.[1] Tract 1's mailing address is on Highway 281. According to the Francises, between 1973 and 1978 Tract 1 was "contained within a fence perimeter," and "[n]o portion of [their] lands described as Tract Two has ever been used as access for ingress and egress to a public road" (presumably Hardy Road, as Tract 2 fronts that road only) by Hobson or his father.

**1990s:** Sometime in the 1990s, Patton sold Tract 3 to Roy Thomas. For roughly two years after his purchase, Thomas allowed Hobson's father to keep using the private road to Highway 281 but later blocked off that road.

**1999:** Hobson's father (and mother) bought Tract 4, which "touches corners" with Tract 1. Because Tract 4 is also landlocked, in 1997 its previous owners were parties to an assignable agreement for a "perpetual easement" over a "strip of land thirty (30) feet in width along and adjacent to the western boundary line of" Tract 5, which is owned by the F.B. Hill Family Partnership[2] and fronts on Logan's Run Road. Contemporaneously with the conveyance to Hobson's parents, the sellers of Tract 4 quitclaimed their interest in the easement over Tract 5 so that Hobson's parents could access Logan's Run Road, which is the roadway associated with Tract 4's

---

[1]We incorporate into this background many of the facts from Hobson's petition, as well as from the summary-judgment evidence filed by the Francises and by the Ezells, the latter of whom currently own Tract 3. The Ezells are not parties to this appeal.

[2]The F.B. Hill Family Partnership appears to be the same entity as the "Hill Family Trust" that appears in various filings and briefs as owning Tract 5.

address. Hobson's father constructed a road on the easement across Tract 5 so that both Tract 1 and Tract 4 would have access to Logan's Run Road.

**2003:** Hobson's parents divorced. As part of a Mediated Settlement Agreement, Hobson's mother Yvonne got Tract 4, and Hobson's father kept Tract 1. Under the MSA, Yvonne was to have provided Hobson Sr. an easement across Tract 4:

> Wife is to deed Husband an easement being 30 feet in width allowing Husband ingress and egress to his property [Tract 1]. This easement is to be surveyed at Husband's expense. Husband shall have the right to use the current roadway crossing Wife's property [Tract 4] for a period of 5 years and as long thereafter as Wife agrees. Husband is to provide to Wife a proposed location of the easement which is to be along Wife's fence lines so as not to unreasonably impact or utilize the current roadway within said 5 year period. Wife agrees to execute a deed setting out this easement so long as it is located reasonably and does not cross the middle of wife's land. Husband agrees that he waives and abandons any right he may have to any easement across Wife's property except for the specific easement that shall be surveyed and dedicated to him at the conclusion of the 5 year period.

It is undisputed that neither party to the divorce followed through with this MSA provision, and although for some time Hobson's father (and Hobson) continued to cross Tracts 4 and 5 to get to Logan's Run Road, Hobson's father never obtained an express easement across Tract 4 during that five-year MSA period.[3]

---

[3]Nothing in the record suggests that Hobson's father ever even paid for the survey that, according to the MSA, he was to obtain within five years and that was to take the place of the "current roadway" that Hobson's father had been allowed to use for five years after the divorce.

**2006:** Alfred and Kim Ezell acquired Tract 3. The Ezells allowed Hobson "on two or three occasions to use an approximate 100 yard portion of Tract 3 in order for him to access Tract 4, located to the south of Tract 3." But, as they each also averred in their summary-judgment affidavits,[4] they have "never agreed to give Jon Hobson an easement across any portion of" Tract 3, and in 2014, when Hobson asked that they "sign an easement agreement for his use of the approximate 100 yard portion of Tract 3," they both refused.

**2009:** Yvonne sold Tract 4 and the associated Tract 5 "easement property" to Hobson's sister, Erika, who continued to allow Hobson and his father to travel across Tract 4. The record does not indicate that either Hobson or his father sought a formal easement from Erika over Tract 4.

**2013:** Hobson's father died.

**2015:** Erika sold Tract 4, along with a "non-exclusive easement for ingress and egress over" Tract 5, to SX3 Properties, LLC. SX3's principal, Neil Southerland, then blocked Hobson's access from Tract 1 to the private road that crosses Tract 4 on its way to the Tract 5 easement.

---

[4]The trial court granted summary judgment for the Ezells, which Hobson did not appeal.

Unrelatedly, also in 2015 the Francises bought Tract 2A, which does not abut Tract 1 (nor did it have any unity of ownership with Tract 2, from which Tract 1 was severed in 1978).

**Later:** At some point after Southerland blocked Hobson's access over Tract 4, Hobson asked the Francises about an easement by necessity across Tract 2 so that—for the first time—he could access Hardy Road to the north. The Francises declined.

**2017:** Hobson sued all his contiguous neighbors save the Hill Family Partnership (owner of Tract 5),[5] seeking various types of easements depending on the status of the adjoining tract. Later that year, the trial court granted summary judgment in the Ezells' favor regarding Tract 3; the following month, the Francises moved for summary judgment. The Francises' combined traditional and no-evidence motion challenged the existence of an easement by necessity as a matter of law on various grounds:

- a necessity did not exist at the time of severance (1978) or on a continuing basis;

- if a necessity did exist in 1978, it terminated when Hobson's father owned Tracts 1 and 4 and obtained an express easement across Tract 5 to Logan's Run Road; or

- any easement of necessity was lost by the ten- or 25-year limitations period.

---

[5]By agreement, the Partnership was temporarily allowing Hobson to cross Tract 5 to reach Logan's Run Road but—according to Hobson—would not give him a formal easement.

Seven days before the hearing scheduled for December 15, 2017, Hobson responded to the Francises' motion, submitting his affidavit, the hand-drawn map reproduced above (which was "not to scale"), and an unsigned supplemental affidavit as his only controverting evidence. Four days before the hearing, without seeking leave of court, Hobson filed his supplemental affidavit in executed form.

The day before the hearing, on December 14, 2017, the Francises filed general and specific objections to Hobson's summary-judgment evidence. Their general objections attacked both of Hobson's affidavits on the grounds that they "lack[ed] any facts sufficient to establish a basis of personal knowledge of the Affiant as to any of the information contained therein"; were "replete with conclusory statements, legal opinion and legal conclusion"; and further "attempt[ed] to include and incorporate impermissible hearsay information," all in violation of evidentiary rules 602, 701, and 802. In addition, the Francises raised specific objections to Hobson's affidavit on a paragraph-by-paragraph basis, objected to the map under procedural rule 193.6, and also objected to Hobson's executed supplemental affidavit because it was filed late.

Hobson did not file a motion seeking leave to submit his executed supplemental affidavit or to amend either affidavit, nor did he file a motion to continue the summary-judgment hearing so that he could correct any alleged defects in form in his summary-judgment evidence.

Following the December 15, 2017 hearing (which was not transcribed), that same day the trial court signed two orders. The first granted the Francises' hybrid

8

summary-judgment motion, and the second order (1) sustained the Francises's general objections to Hobson's initial affidavit; (2) made no ruling on any of their specific objections, which were charted by paragraph on the order; (3) overruled the objections to the map attached as Exhibit 1 to Hobson's initial affidavit; (4) sustained the Francises' untimeliness objection to the supplemental affidavit; and (5) overruled their specific objection that the second sentence of the supplemental affidavit's paragraph 2 constituted inadmissible opinion testimony and failed to show personal knowledge.

Some two weeks later, Hobson filed a motion to reconsider the summary judgment and the order on the Francises' objections, combined with a motion for leave to file an amended affidavit and to set aside the summary-judgment order. The trial court never ruled on this motion.

**2018:** Shortly after SX3 and Southerland filed their own summary-judgment motion concerning Tract 4, Hobson nonsuited with prejudice his claims against those remaining defendants. This appeal followed.

### Hobson's Issues

Although the Issues Presented section of Hobson's brief lays out five discrete issues, we will construe them broadly as raising two appellate complaints and will discuss them in reverse order, as Hobson did in organizing his argument: (1) that the trial court erred in sustaining the Francises' allegedly meritless general objections to his summary-judgment affidavit without ruling on their specific objections or,

9

alternatively, by not ruling on Hobson's motion for leave to file an amended affidavit;[6] and (2) that the trial court erred in granting summary judgment to the Francises on the merits of their motion. We overrule Hobson's first issue—technically, his fourth and fifth Issues Presented—and because the practical effect of this holding is that Hobson thus failed to proffer more than a scintilla of evidence to raise a genuine issue of material fact in response to the Francises' no-evidence summary-judgment motion, we also overrule his second issue, comprising his first through third Issues Presented.

## Summary Judgment Was Appropriate on This Record

### A.    Standard of Review

We review summary judgments de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

---

[6]Hobson framed these issues as follows:

4.  The trial court erred in sustaining Appell[ees'] general objections to Appell[ant's] summary judgment affidavit timely submitted to the court on 12/08/2017, because those objections were not sufficiently specific to constitute valid objections, nor did such objections otherwise have merit.

5.  Alternatively, the trial court erred in refusing to rule on and grant Appellant's motion for leave to file an amended affidavit responding to Appellees' form objections based on the alleged lack of personal knowledge of Appellant, because Texas law requires that non-movants be granted leave to file amended affidavits to correct alleged form deficiencies.

10

Under Rule 166a(i), after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that no evidence supports an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which no evidence exists. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary-judgment evidence that raises a genuine, material fact issue. *See* Tex. R. Civ. P. 166a(i) & 1997 cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). The "entire record" does not mean everything on file with the trial court, though: we are "limited to the summary judgment proof produced in the response" and are "not free to search the entire record, including materials not cited to . . . the trial court." *Rollins v. Texas Coll.*, 515 S.W.3d 364, 369 (Tex. App.—Tyler 2016, pet. denied); *see also De La Garza v. Bank of New York Mellon*, No. 02-17-00427-CV, 2018 WL 5725250, at *3 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.) (noting that, in the context of a no-evidence motion, even though evidence is before the trial court that would compel denial of the motion if the nonmovant produced it, that evidence must be ignored if the nonmovant did not point it out to the trial court); *Arredondo v. Rodriguez*, 198 S.W.3d 236, 238–39 (Tex. App.—San

11

Antonio 2006, no pet.) (providing that in a summary-judgment proceeding, a party "must specifically identify the supporting proof on file that it seeks to have considered by the trial court"; an appellate court cannot search the record for materials not cited to or relied on by the trial court); *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.) (same).[7]

We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*,

_____

[7]This principle was not affected by the Texas Supreme Court's recent decision in *Lance v. Robinson*, 543 S.W.3d 723 (Tex. 2018). There, the supreme court held that the summary-judgment movants' failure to attach relevant deeds to their motion was not fatal to the judgment because the movants had "expressly 'referenced and specified' the [earlier] injunction-hearing transcript and exhibits 'as evidence in support of' the motion," and at the hearing, the trial court "had the injunction-hearing transcript—including the deeds and other exhibits—in front of him, reviewed the deeds, and discussed them with counsel." *Id.* at 732. We have also distinguished *Lance*'s procedural posture—dealing with a traditional-summary-judgment movant's unattached evidence—from a nonmovant's response to a no-evidence motion. *De La Garza*, 2018 WL 5725250, at *3 n.4. In any event, Hobson does not argue that the trial court should have looked to or *sua sponte* considered the Ezells' earlier summary-judgment evidence or the trial court's granting summary judgment to the Ezells as demonstrating that he had no legal and enforceable easement across Tract 3. Absent Hobson's ability to establish a legal and enforceable easement across some other tract (such as Tract 4, without having to first encroach on Tract 3), this lack of a legal and enforceable easement across Tract 3 would be a necessary element of his easement-by-necessity claim against the Francises.

12

286 S.W.3d at 310 (citing *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

When, as here, a party moves for summary judgment under both rules 166a(c) and 166a(i) in a hybrid motion, we will first review the trial court's judgment under the standards of rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If the appellant failed to produce more than a scintilla of evidence under that burden, we need not analyze whether the appellee's summary-judgment proof satisfied the rule 166a(c) burden. *Id.*

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When the trial court's judgment rests on more than one independent ground or defense, the aggrieved party must assign error to each ground, or we will affirm the judgment on the uncomplained-of ground. *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).

**B.    Summary-Judgment Procedure and Evidentiary Rulings, Generally**

When a party objects to formal defects in summary-judgment affidavits, such as lack of personal knowledge or hearsay, the opposing party must be given an opportunity to amend the affidavits to correct such nonsubstantive deficiencies. *See* Tex. R. Civ. P. 166a(f) ("Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend."). But this opportunity to cure must be properly and timely invoked. *See, e.g., Lewis v. Rucker*, No. 02-16-00254-CV, 2017 WL 4172063, at *3 (Tex. App.—Fort Worth Sept. 21, 2017, pet. denied) (mem. op.) (holding that trial court did not err by not giving nonmovant an opportunity to cure defect in summary-judgment affidavit when nonmovant did not seek to do so before trial court entered summary judgment; nonmovant "did not avail himself of the opportunity that he had to cure the defect. The trial court did not err by failing to grant relief that Lewis did not request.").

A subsection (f) request to amend a summary-judgment affidavit comes too late if judgment has already been entered. *See* Tex. R. Civ. P. 166a(c) ("The judgment sought shall be rendered forthwith if . . . the . . . affidavits . . . on file at the time of the hearing, or filed thereafter and *before judgment* with permission of the court, show that" no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law (emphasis added)); *cf. A.J. Morris, M.D., P.A. v. De Lage Landen Fin. Servs., Inc.*, No. 02-06-00430-CV, 2009 WL 161065, at *3 (Tex. App.—Fort Worth Jan.

14

22, 2009, no pet.) (mem. op.) (noting that "any evidence on which Appellants relied to raise fact issues had to be presented to the trial court before it ruled on the claims").

In contrast, a party has no right to amend a summary-judgment affidavit to correct substantive defects. *See Threlkeld v. Urech*, 329 S.W.3d 84, 89 (Tex. App.—Dallas 2010, pet. denied) (noting that trial court is "required to provide an opportunity to amend a summary judgment affidavit only where the defect is one of form, not substance"); *EOG Res., Inc. v. Killam Oil Co., Ltd.*, 239 S.W.3d 293, 302 (Tex. App.—San Antonio 2007, pet. denied) (observing rule that "[i]f a defect in a summary judgment affidavit is one of substance, the trial court is not required to provide an opportunity to amend"). And "[a] conclusory statement in an affidavit is a defect of substance." *Threlkeld*, 329 S.W.3d at 89 (citing *EOG Res.*, 239 S.W.3d at 302). A conclusory statement is one that "does not provide the underlying facts to support the conclusion." *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.); *see also Trinity River Estates, L.P. v. DiFonzo*, No. 02-08-393-CV, 2009 WL 1506928, at * 3 (Tex. App.—Fort Worth May 28, 2009, no pet.) (mem. op.) (noting that competent summary-judgment evidence "must provide an explanation linking the basis of the conclusion to the facts"). Conclusory affidavits are "not enough to raise facts issues" because they are "not credible, nor susceptible to being readily controverted." *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (same).

15

If a trial court has properly sustained objections to summary-judgment evidence, we may not consider those parts of the record. *Miller v. Great Lakes Mgmt. Serv., Inc.*, No. 02-16-00087-CV, 2017 WL 1018592, at \*2 (Tex. App.—Fort Worth Mar. 16, 2017, no pet.) (mem. op.).

We review a trial court's decision to exclude summary-judgment evidence for an abuse of discretion. *Miller*, 2017 WL 1018592, at \*3 (citing *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 667 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *In re Estate of Denman*, 362 S.W.3d 134, 140 (Tex. App.—San Antonio 2011, no pet.)). But even if the trial court wrongly excluded evidence in a summary-judgment proceeding, to obtain a reversal on that basis the appellant must show that the exclusion probably resulted in an improper judgment. *Id.* at 3. "A successful challenge to the trial court's evidentiary rulings generally requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded." *Id.* (citing *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 824 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)).[8]

---

[8]Hobson's appellate brief does not mention this or any standard of review, nor does he explicitly attempt to show that the "judgment turn[ed] on" his affidavits' exclusion. The Francises made the latter point to the trial court in responding to Hobson's motion for reconsideration: "While the Plaintiff attempts to characterize the Court's granting of the Defendants' Motion for Summary Judgment as being solely based on objections to Plaintiff's affidavits, the Court made no such specific ruling within the granting of the Summary Judgment." *Cf. Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (holding that trial court's failure to rule on evidentiary objections did not imply a ruling because "even without the objections,

## C.   Analysis

The elements of an easement by necessity are (1) a unity of ownership of the dominant and servient estates must have existed before they were separated; (2) the access must be a necessity and not a mere convenience; and (3) the necessity must have existed at the time the two estates were severed. *E.g., Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984); *Duff v. Matthews*, 311 S.W.2d 637 (Tex. 1958). The no-evidence portion of the Francises' motion asserted that Hobson lacked sufficient evidence of every element.

With that motion, the Francises put the burden on Hobson to come forward with more than a scintilla of evidence for each element of an easement by necessity. Hobson's response proffered his affidavit, the hand-drawn map, and an unsigned supplemental affidavit[9] to ostensibly provide such evidence. He did not ask the trial court to take judicial notice of its file, nor did he refer to, attach, or incorporate by

---

the trial court could have granted summary judgment against the Seims if it found that their evidence did not generate a genuine issue of material fact").

[9]Fewer than seven days before the hearing, Hobson filed an executed supplemental affidavit, although he did not seek leave of court to do so. That supplement added but one substantive sentence: "Other than an easement by necessity across the Francis Defendants' property ('Tract 2'), and the easement on Tract 4 discussed in my original affidavit, neither I nor my father have ever had an easement or other enforceable legal right to use any other real property to access Tract 1."

17

reference any additional evidence to support one or more elements of his easement-by-necessity claim.

We construe Hobson's first appellate issue, as he reframed his fourth and fifth Issues Presented, as encompassing the arguments to which we now turn.

### 1. Hobson's appellate complaint does not match his complaint before the trial court.

The Francises objected globally to Hobson's affidavit and its supplement and also objected paragraph by paragraph. For their general objections, the Francises stated,

> Generally, the Affidavit of Jon Hobson and the Supplemental Affidavit of Jon Hobson completely lack any facts sufficient to establish a basis of personal knowledge of the Affiant as to any of the information contained therein. The global and conclusory boilerplate that "the facts set forth in this affidavit are within my personal knowledge" is no basis for the trier of fact to conclude that the affiant actually has personal knowledge. As such, these Defendants object to the Affidavit and Supplemental Affidavit of Jon Hobson in their entirety for the reason such documents violate Rule 602 of the Texas Rules of Evidence.
>
> Further, Defendants object to both affidavits for the reason same are replete with conclusory statements, legal opinion and legal conclusion, and further attempt to include and incorporate impermissible hearsay information, all of which these Defendants allege should not be considered for any purpose in this summary judgment proceeding for the reason same violates Rules 802, 602, and 701 of the Texas Rules of Evidence.

As noted, Hobson did not respond to any of the Francises' objections, whether general or specific, before the summary-judgment hearing, nor did he seek written

18

leave to amend his affidavits or move for a continuance so that he might correct any formal defects.

Roughly two weeks after the trial court entered summary judgment against him and sustained the Francises' general objections, Hobson filed a motion for reconsideration of both the summary judgment itself and of the order on the Francises' objections, combined with a motion for leave to file an amended affidavit and to set aside the summary-judgment order. We will consider that motion for reconsideration to have been the functional equivalent of a motion for new trial.

Hobson's motion—which the trial court never expressly ruled on—did not call to the trial court's attention his appellate complaint that it was error to sustain the general objections because they were not specific enough.[10] The rules of error preservation apply to summary-judgment proceedings as well as to trials. Tex. R. App. P. 33.1(a); *Seim*, 551 S.W.3d at 163–64 ("The same evidentiary standards that apply in trials also control the admissibility of evidence in summary-judgment proceedings. But the rules of error preservation also apply." (citation omitted)); *cf. Cunningham v. Anglin*, No. 05-12-00039-CV, 2014 WL 3778907, at *3 (Tex. App.—Dallas July 31, 2014, pet. denied) (mem. op.) (noting rule 33.1(a)'s requirements and stating that party whose

---

[10]The pertinent part of Hobson's fourth Issue Presented states that "[t]he trial court erred in sustaining Appell[ees'] general objections to Appell[ant's] summary judgment affidavit timely submitted to the court on 12/08/2017, because those objections were not sufficiently specific to constitute valid objections."

summary-judgment evidence was excluded "may not argue on appeal any and every new issue he can think of nor may he resurrect issues he abandoned at the hearing"; if a party "fails to object to the trial court's ruling that sustains an objection to his summary judgment evidence, he has not preserved the right to complain on appeal about the trial court's ruling," and "[e]ven if the objections appear meritorious on appeal, they are not preserved for appellate review if the record does not show the complaint was made to the trial court" (citing *Cantu v. Horany*, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.)). This principle applies equally to motions for new trial: the trial court must know what is being complained about. *See* Tex. R. App. P. 33.1(b) ("In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion, unless taking evidence was necessary to properly present the complaint in the trial court."); *cf. Cooper v. Tex. Dept. of Criminal Justice Corr. Insts. Div.*, No. 12-17-00182-CV, 2018 WL 1940395, at *2 (Tex. App.—Tyler Apr. 25, 2018, no pet.) (mem. op.) (holding that by reasserting sham-affidavit argument in motion to reconsider that was overruled by operation of law, appellant preserved argument for appellate review).

By not apprising the trial court of this particular complaint, Hobson has waived the argument that the trial court erred in sustaining the Francises' general objections to his affidavit and supplemental affidavit because, in Hobson's view, those objections were insufficiently specific to constitute valid objections. Rather, Hobson's motion for

reconsideration sought only to persuade the trial court that his original affidavit "recited sufficient facts to show how he obtained personal knowledge of the facts set forth in the affidavit," and that the Francises were wrong to lodge a hearsay objection to Hobson's recounting out-of-court statements that he made to them asking for an easement. Moreover, Hobson's motion for reconsideration did not even mention or analyze a third category of the Francises' general objections: that both affidavits were "replete with conclusory statements, legal opinion and legal conclusion."

### 2. Did the Francises' objections have merit?

As a subpart of his fourth Issue Presented, Hobson contends that the Francises' general objections should not have been sustained because they did not "otherwise have merit."[11] But in the argument section of his brief dealing with this subissue, Hobson goes through most, but not all, of his affidavit's statements as referenced in the Francises' *specific* objections, in claiming that those statements were unobjectionable on grounds of lack of personal knowledge, hearsay, or "conclusory statements, legal opinion and legal conclusion." Although we need not (and cannot) address the specific formal objections dealing with personal knowledge and hearsay because the trial court did not rule on them, *see Seim*, 551 S.W.3d at 166, we can

---

[11]Again, Hobson did not argue to the trial court that the Francises' general objections did not "otherwise have merit," and thus waiver seemingly applies to this subissue as well. *See* Tex. R. App. P. 33.1(a). Despite the wording of Hobson's issue, which is not on its face entirely clear, his brief analyzes the Francises' specific objections.

21

nevertheless discern what the general objections covered and address their merits broadly. Substantive defects, on the other hand, can be first raised on appeal, and so we can consider whether the Francises' objections based on conclusions and legal opinion have merit.

### a. Lack of personal knowledge (objections under TRE 602)

A summary-judgment affidavit must affirmatively show how the affiant became familiar with the purported facts. *See* Tex. R. Civ. P. 166a(f) (summary-judgment affidavits must be "made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); *Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761–62 (Tex. 1988). Texas rule of evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." *See* Tex. R. Evid. 602.

As a general matter, Hobson's affidavit did not lay the groundwork for basic but critical personal knowledge. First, he averred only that he was "over the age of eighteen" when executing the affidavit in December 2017, and so nothing in the affidavit establishes that he could have had personal knowledge of events occurring in (or before) 1978 or for some undefined period afterward. Hobson also did not aver that he has ever lived on Tract 1 or, if so, when that was; he stated only that he

22

"own[s] a 40 acre tract of real property in Parker County . . . depicted on the attached map as the 'Hobson Tract' or 'Tract 1'" and that he "inherited Tract 1 from [his] father Jonathan Hobson when he passed away in September 2016." Those amorphous statements simply do not suffice to demonstrate when and how Hobson acquired the personal knowledge he purported to have. Because we may thus discount many of Hobson's affidavit statements, so too could the trial court, without even having to look to the Francises' specific objections.

For example, paragraph 5 of Hobson's affidavit states that "[b]efore the sale in 1978 to my father, the Francis[es] were able to access Hardy Road from Tract 1 (which they then owned) by passing through Tract 2 (which they also then owned and still own today)." Hobson's affidavit does not reveal in any way how this statement could be based on his personal knowledge.

Paragraphs 6 and 7 describe how Hobson's father received permission from Jack Patton in and after 1978, and later from Roy Thomas in the 1990s, to access Highway 281 from Tract 1 by crossing Tract 3. Paragraph 7 recites that Thomas "changed his mind and fenced off the road. He also pulled out the culverts which caused the road to flood." Again, Hobson's affidavit fails to show how Hobson acquired or could have acquired personal knowledge of these facts.

Paragraph 12 describes Hobson's parents' 2003 divorce proceedings and an associated agreement about an "easement across Tract 4 to connect with the

23

road/easement across Tract 5,"[12] but his affidavit does not reveal how he had personal knowledge of the statement that Yvonne's "attorney was supposed to record the easement across Tract 4, but never did."

Statements such as the above differ from those in the three cases Hobson cites for the proposition that his affidavit sufficiently demonstrated personal knowledge of its contents. *See Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied) (concluding, in suit on promissory note, that noteholder's affidavit demonstrated personal knowledge because he "identified himself as a party to the suit, the owner and landlord of the property subject to the lease at issue, a party to the settlement agreement at issue, and the holder of the promissory note at issue. Noble's recital clearly resolves any questions regarding how he obtained knowledge of the matters contained in his affidavit."); *Equisource Realty Corp. v. Crown Life Ins.*, 854 S.W.2d 691, 695 (Tex. App.—Dallas 1993, no pet.) (concluding, in suit to recover earnest money following failed real-estate transaction, that seller's representative demonstrated personal knowledge of facts surrounding attempted real-estate venture by averring that he was "Director of Property Dispositions"); *Jackson T. Fulgham Co. v.*

---

[12]Although Hobson did not include that agreement as part of his summary-judgment evidence, the Francises attached the divorce decree and MSA as part of their own summary-judgment evidence, to show that Hobson's father had acquired an "absolute unequivocal right to a defined easement over and across Tract Four to a public roadway, which right abrogated any claim of necessity, if any ever existed, as against Tract Two owned by the Francis Defendants."

24

*Stewart Title Guar. Co.*, 649 S.W.2d 128, 130 (Tex. App.—Dallas 1993, writ ref'd n.r.e.) (concluding, in suit on note, that unchallenged fact that affiant was entity–noteholder's "vice-president and agent" was enough to show how affiant learned or knew of facts surrounding status of note). In each of these cases, the affiant's personal knowledge was inferable from the particular position that each occupied in relation to the subject matter of the suit. In contrast, we cannot infer from Hobson's affidavit that he has personal knowledge of everything in it, most especially the particular statements noted.

### b.       Hearsay (objections under TRE 802)

The Francises also objected to Hobson's affidavit as incorporating impermissible hearsay. *See* Tex. R. Evid. 801(d), 802. As with their general objections to a lack of personal knowledge, we can discern, as could the trial court, where such problems cropped up.

Paragraph 6 begins, "After my father bought Tract 1 in 1978, he was [g]iven permission to use a private road through a tract of land to the west of Tract 1 owned at that time by Jack Patton." Because we have agreed with the Francises that Hobson failed to demonstrate his personal knowledge of this statement, which to us is its more serious flaw, its hearsay aspects are immaterial.

Portions of paragraph 16 recite, "When that happened [Southerland's blocking access to the road across Tract 4], I contacted the Francis Defendants about an easement by necessity a[]cross their property (Tract 2) to have access to Hardy Road.

25

When we talked about this, I suggested a road th[r]ough [the] west side of Tract 2 and Tract 2A because that would be much more convenient than a road only through Tract 2, which would have to pass by the Francis' house." Even assuming that the trial court would have erred by sustaining a hearsay objection to this passage, we conclude that this part of Hobson's affidavit is essentially irrelevant and does not raise a genuine issue of material fact on an essential element of an easement-by-necessity claim, and so any error in sustaining a hearsay objection would have been harmless. *See, e.g., Woods v. Soules*, No. 02-17-00336-CV, 2018 WL 2248488, at *4 (Tex. App.—Fort Worth May 17, 2018, pet. denied) (mem. op.) (holding that excluded evidence was not controlling on a dispositive material issue and thus any error in excluding summary-judgment evidence was harmless); *Rodriguez v. Haddock*, No. 02-01-00386-CV, 2003 WL 1784923, at *3 (Tex. App.—Fort Worth Apr. 3, 2003, no pet.) (mem. op.) (holding that even if trial court improperly excluded summary-judgment evidence about what defendant knew, that evidence would have been insufficient to show knowledge of his dog's vicious propensity and thus any error in excluding evidence was harmless).

### c. Conclusory statements (Rule 166a(f)) and lay-witness opinion (objections under TRE 701)

Hobson's motion for the trial court to reconsider and set aside its ruling on the Francises' objections discussed only the no-personal-knowledge and hearsay aspects, which are formal defects. He did not argue to the trial court that his affidavit

contained no substantive defects despite the Francises' contention, and thus did not give the trial court a chance to reconsider that aspect of the Francises' general objections, as he must have under rules 33.1(a) and (b).[13]

And even though Hobson neither cites nor analyzes any authorities in this section of his brief, we conclude that the Francises' objections were valid and, in addition, that the particular statements Hobson discusses would have been immaterial to his attempt to create a fact issue on whether he has an easement by necessity. Put differently, had the trial court explicitly sustained the specific objections, it would not have abused its discretion.

For example, in paragraph 5 of his affidavit Hobson states that "[b]efore the sale in 1978 to my father, the Francis' [*sic*] were able to access Hardy Road from Tract 1 (which they then owned) by passing through Tract 2 (which they also then owned and still own today)." Without more, that statement is merely conclusory inasmuch as it "does not provide the underlying facts to support the conclusion." *Residential Dynamics*, 186 S.W.3d at 198. This is especially so when contrasted with the Francises' own summary-judgment affidavits, which each averred that from the time they

_____

[13]While it is true that substantive defects in summary-judgment affidavits may be complained about for the first time on appeal, that principle does not logically apply when it is the losing nonmovant complaining that the movant succeeded in challenging the nonmovant's affidavit on substantive-defect grounds. In this situation, to preserve error Hobson must have first complained to the trial court. *See* Tex. R. App. P. 33.1(a), (b). Despite apparent waiver of claimed error on this point, we will consider the affidavit statements that Hobson's brief addresses.

bought Tract 1 in 1973 until selling it in 1978, they used a lane across Tract 3 (not across Tract 2) to get to and from Highway 281 to the west; and that during the time they owned Tract 1, it was "contained within a fence perimeter." Moreover, the Francises stated that "[n]o portion of the original lands acquired by us [Tract 2] was ever used as ingress and egress to a public roadway."[14]

More important to Hobson's claim of a necessity easement, the final statement in paragraph 6 of his affidavit—"My father never had an easement a[]cross any part of Tract 3"—strikes us as both conclusory and as a legal opinion offered by a lay witness, and thus inadmissible on either basis. *Cf. Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) (holding that affiant bank president's statement that "entire principal indebtedness . . . was renewed and extended" constituted legal opinion insufficient to create fact issue in response to summary-judgment motion).

Overall, Hobson's affidavit also suffers from much the same deficiency as in *Mavex Mgmt. Corp. v. Hines Dallas Hotel Ltd. P'ship*, 379 S.W.3d 456 (Tex. App.—Dallas 2012, no pet.). There, the nonmovant submitted an affidavit the "vast majority" of which was "nothing more than sworn repetitions of the conclusory allegations of appellants' pleadings together with string citations to fifty documents attached to the affidavit." *Id.* at 460. Other than the affidavit's conclusory statements, the *Mavex*

_____

[14]From the context, this statement implies "from Tract 1 to Hardy Road to the north."

28

appellants "did not identify with any specificity when" certain statements "were actually made to appellants and provide[d] little, if any, context as to when or in what circumstances these statements were made," and thus the affidavit did "not raise fact issues." *Id.* at 461 (citing *Ryland*, 924 S.W.2d at 122); *see also Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (noting that "an affidavit that is nothing more than a sworn repetition of allegations in the pleadings has no probative force, as the statements are no more than conclusions or a mere surmise or suspicion"). Similarly, Hobson's affidavit simply rehashed his petition's allegations in large part, also without providing specific details surrounding its conclusory assertions.

### 3. Should Hobson have been given leave to amend his affidavit even though the trial court had already entered summary judgment?

Hobson also argues that the trial court erred by not allowing him to amend his affidavits to correct formal defects. But by failing either to (1) file a written motion to amend his affidavits or to continue the summary-judgment hearing for that purpose or (2) present us with an appellate record establishing that he orally made such a request to the trial court before summary judgment was entered, Hobson did not trigger rule 166a(f)'s protections. *See* Tex. R. Civ. P. 166a(f) ("Defects in the form of affidavits . . . will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.").

29

Although Hobson cites cases purporting to back up his argument that the trial court erred by not allowing him to amend his affidavit, those cases are distinguishable. Each of them[15] involved a situation in which the losing party came forward with a record showing that it had unsuccessfully asked the trial court for a continuance or for leave to amend (or both) before summary judgment was entered. *See Threlkeld*, 329 S.W.3d at 89 (noting that nonmovant failed to seek leave to amend affidavit in trial court, but holding in any event that affidavit defect was one of substance, not form, and so trial court would not have been required to allow amendment); *Tri-Steel Structures, Inc. v. Baptist Found. of Tex.*, 166 S.W.3d 443, 447–48 (Tex. App.—Fort Worth 2005, pet. denied) (quoting reporter's record showing appellant's request, at summary-judgment hearing, for a continuance in order to take depositions to cure opponent's hearsay objections—which were lodged two days before hearing—to appellant's evidence; summary judgment not entered until two weeks later); *EOG Res. Inc. v. Wall*, 160 S.W.3d 130, 134 (Tex. App.—Tyler 2005, no pet.) (holding that trial

---

[15]There is one possible exception among Hobson's cases, *Wyatt v. McGregor*, 855 S.W.2d 5, 18 (Tex. App.—Corpus Christi 1993, writ denied) (reversing partial summary judgment because nonmovant had no opportunity to amend defective affidavits, to which movants first objected at summary-judgment hearing (transcript of which was in appellate record), but opinion does not reflect whether nonmovant requested leave to amend at hearing or waited until after judgment entered to file a formal motion for leave). Because *Wyatt*'s procedural history in this regard is vague, we will not infer that the court blessed a situation in which a nonmovant waited until after judgment was entered to move for leave to amend an affidavit, which is what Hobson did here. *Cf.* Tex. R. Civ. P. 166a(c).

court erred in not allowing appellant to supplement evidence to cure formal defects in earlier-submitted affidavits, but procedural facts as recited in opinion imply that appellant moved for leave before summary judgment was entered).

Here, the first place in the record where we find that Hobson asked for leave to amend his affidavit to correct formal defects was in his post-judgment motion for reconsideration.[16] Caselaw most closely matching this sequence of events establishes that Hobson waived any complaint that he should have been given leave to amend his affidavit. *See Lewis*, 2017 WL 4172063, at *3 (holding that trial court did not err by not giving nonmovant an opportunity to cure defect in summary-judgment affidavit when nonmovant did not seek to do so before trial court entered summary judgment; nonmovant "did not avail himself of the opportunity that he had to cure the defect. The trial court did not err by failing to grant relief that Lewis did not request."); *Barnes v. Athens*, No. 02-12-00173-CV, 2012 WL 4936624, at *2 (Tex. App.—Fort Worth Oct. 18, 2012, no pet.) (mem. op.) (holding no abuse of discretion when trial court considered and sustained movant's objections to nonmovant's summary-judgment evidence, which objections were filed one day before hearing; record did not show that nonmovant either requested or filed motion for continuance for time to respond

---

[16]Although his motion for reconsideration stated that, at the hearing, Hobson had "orally requested leave to submit an amended affidavit to cure the alleged lack of personal knowledge deficiency," Hobson does not repeat that claim in his appellate briefing. In any event, we do not have a reporter's record from the summary-judgment hearing to support such an assertion even if Hobson had advanced it here.

to objections); *Coleman v. Woolf*, 129 S.W.3d 744, 749–50 (Tex. App.—Fort Worth 2004, no pet.) (holding that in absence of timely request, objection, or motion seeking opportunity to cure defects, trial court did not err by failing to grant unrequested relief of providing opportunity to cure defect in controverting affidavit; movant–defendant filed objections to nonmovant–plaintiff's evidence four days before summary-judgment hearing, but nonmovant "did not file a response to the objections or move for a continuance of the hearing").

In sum, because Hobson did not preserve his argument that the Francises' general objections to his summary-judgment affidavits were not specific enough for the trial court to rule on them, because in any event Hobson has failed to show that the trial court abused its discretion by sustaining those objections, and because Hobson did not timely ask to amend his affidavit to correct formal defects, we overrule his first issue, as reframed from his Issues Presented 4 and 5. And because the only remaining evidence the trial court could have considered—the unsigned supplemental affidavit and the map—do not raise a fact issue sufficient to defeat the Francises' no-evidence motion, we hold that Hobson did not come forward with more than a scintilla of evidence sufficient to defeat the no-evidence portion of the Francises' summary-judgment motion. We thus overrule his second issue, as reframed from Issues Presented 1 through 3.

## Conclusion

Having overruled Hobson's issues, we affirm the trial court's judgment.

32

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  June 27, 2019